UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
ROBBY W. SEGNITZ,                                   Chapter 7
        DEBTOR.                                  Case No. 09-17782-WCH
_____

ROBBY W. SEGNITZ,
        PLAINTIFF,
                                                                               Adversary Proceeding
v.                                                                      No. 12-1214

MASSACHUSETTS DEPARTMENT
OF REVENUE,
        DEFENDANT.
_____

**MEMORANDUM OF DECISION**

I. **INTRODUCTION**

      The matter before the Court is the "Massachusetts Department of Revenue's Motion for Summary Judgment" (the "Motion for Summary Judgment") filed by the defendant the Massachusetts Department of Revenue (the "MDOR") and the "Plaintiff's Opposition to the Defendant's Motion for Summary Judgment" (the "Opposition") filed by the plaintiff Robby W. Segnitz (the "Debtor"). The Debtor filed this adversary proceeding seeking a determination that certain income taxes are dischargeable, while the MDOR filed counterclaims asserting that the taxes in question are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(1)(B)(i) and/or (C). The MDOR now seeks summary judgment with respect to those counterclaims and the Debtor opposes. For the reasons set forth below, I will grant in part the Motion for Summary Judgment.

1

## II. PROCEDURAL MATTERS

Pursuant to Local Rule 56.1 ("Local Rule 56.1") of the United States District Court for the District of Massachusetts, adopted and made applicable to proceedings in the Bankruptcy Court by Massachusetts Local Bankruptcy Rule ("MLBR") 7056-1, motions for summary judgment must include "a concise statement of material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions, and other documentation."[1] Failure to include such a statement constitutes grounds for denial of the motion.[2] Oppositions to summary judgment must similarly be accompanied by a statement of material facts to which the opposing party contends that there exists a genuine issue to be tried, with supporting references to the record.[3] All referenced documents must be filed as exhibits to the motion or opposition.[4] Material facts set forth in the moving party's statement are deemed admitted for purposes of summary judgment if not controverted by an opposing statement.[5]

The MDOR filed a statement pursuant to Local Rule 56.1, the Defendant's Statement of Material Facts for Which There is No Genuine Dispute, with the Motion for Summary Judgment on February 25, 2013.[6] The Statement of Facts properly contains citations to supporting exhibits. The Debtor did not file an opposing statement of facts with the Opposition or identify

---

[1] LR, D. Mass 56.1, adopted and made applicable to proceedings in the Bankruptcy Court by MLBR 7056-1.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] Defendant's Statement of Material Facts for Which There is No Genuine Dispute (the "Statement of Facts"), Docket No. 12.

any material facts in the Statement of Facts with which he disagreed.[7]  Accordingly, the facts set forth in the Statement of Facts are deemed admitted for purposes of summary judgment.

### III. BACKGROUND

For the years 1999 through 2004, the Debtor filed each of his Massachusetts income tax returns late (the "Periods at Issue").[8]  His income tax return for the year 2005 was filed timely. The following chart reflects the date each return was due, the date it was filed, and, if applicable, when the MDOR assessed a tax:[9]

| Tax Year | Date the Return was Due | Date the Return was Filed | Date on which Tax was Assessed by MDOR |
| --- | --- | --- | --- |
| 1999 | April 18, 2000 | March 8, 2006 | No Assessment |
| 2000 | April 17, 2001 | June 15, 2005 | January 28, 2005 |
| 2001 | April 16, 2002 | June 15, 2005 | December 30, 2004 |
| 2002 | April 15, 2003 | March 8, 2006 | December 1, 2005 |
| 2003 | April 15, 2004 | March 8, 2006 | No Assessment |
| 2004 | April 15, 2005 | September 20, 2005 | No Assessment |
| 2005 | April 18, 2006 | [Timely Filed] | N/A |

During the Periods at Issue, the Debtor was unmarried with no dependents and operated a fishing business as a sole proprietor.[10]  Beginning in 2000, the Debtor reported gross income in the following amounts on his tax returns:

---

[7] The Debtor did, however, attach an affidavit from his former wife to the Opposition. In it, she states that she believes that the Debtor has no formal education beyond the eighth grade, is a fisherman, has had recurring substance and alcohol abuse problems, and that she made sure the Debtor paid his Massachusetts income taxes between 2007 and 2010.  Affidavit in Opposition to Defendant's Motion for Summary Judgment, Docket No. 16, Ex. 1.

[8] Because I find that year 2005 analytically distinct, I have intentionally omitted it from the "Periods at Issue."

[9] Exhibit 9, Docket No. 12-4.

[10] Statement of Facts, Docket No. 12 at ¶ 24.

3

| Tax Year | Gross Income |
|---|---|
| 2000 | $55,201.23[11] |
| 2001 | $113,672.00[12] |
| 2002 | $71,568.00[13] |
| 2003 | $75,234.00[14] |
| 2004 | $128,870.00[15] |
| 2005 | $205,501.00[16] |
| 2006 | $96,791.00[17] |
| 2007 | $121,784.00[18] |
| 2008 | $103,071.00[19] |
| 2009 | $109,709.00[20] |

During the Periods at Issue, the Debtor also engaged in gambling, reporting winnings and losses in 2002, 2003, 2004, and 2005.[21] Specifically, the Debtor reporting gambling income in the following amounts:

---

[11] *Id.* at ¶ 6; Exhibit 2, Docket No. 12-4.

[12] Statement of Facts, Docket No. 12 at ¶ 9; Exhibit 3, Docket No. 12-4.

[13] Statement of Facts, Docket No. 12 at ¶ 12; Exhibit 4, Docket No. 12-4.

[14] Statement of Facts, Docket No. 12 at ¶ 15; Exhibit 5, Docket No. 12-4.

[15] Statement of Facts, Docket No. 12 at ¶ 18; Exhibit 7, Docket No. 12-4.

[16] Statement of Facts, Docket No. 12 at ¶ 21; Exhibit 6, Docket No. 12-4.

[17] Statement of Facts, Docket No. 12 at ¶ 52.

[18] *Id.* at ¶ 53.

[19] *Id.* at ¶ 54.

[20] *Id.* at ¶ 55.

[21] *Id.* at ¶ 25; Exhibits 4-5, 7-8, Docket No. 12-4.

| Tax Year | Income |
|---|---|
| 2002 | $4,450.00[22] |
| 2003 | $1,600.00[23] |
| 2004 | $1,210.00[24] |
| 2005 | $33,250.00[25] |

Although the Debtor reported gambling income in the amount of $33,250.00 in the year 2005, he reported a corresponding loss in the same amount on his federal tax return for that year.[26]

In addition to failing to report his income, starting in 1999, the Debtor failed to make any estimated payments or pay the corresponding tax liabilities.[27] He has, however, made some partial payments towards his 2000 income tax liability.[28] Nevertheless, the Debtor reported on his 2005 Federal Tax Return that he paid $6,655.00 for "state/local" income taxes.[29] Up until the Debtor's bankruptcy filing, the MDOR issued various notices of failure to file return, notices of intent to assess, demands for payment, consolidated bills, notices of offset, and tax amnesty notices.[30]

The Debtor filed a voluntary Chapter 7 petition on August 15, 2009. On "Schedule F – Creditors Holding Unsecured Nonpriority Claims," ("Schedule F"), the Debtor listed outstanding Massachusetts income taxes for the Periods at Issue totaling $76,646.98. The MDOR asserts that

---

[22] Exhibit 4, Docket No. 12-4.

[23] Exhibit 5, Docket No. 12-4.

[24] Exhibit 7, Docket No. 12-4.

[25] Exhibit 8, Docket No. 12-4.

[26] *Id.*

[27] Statement of Facts, Docket No. 12 at ¶¶ 23, 51.

[28] *Id.* at ¶ 51.

[29] *Id.* at ¶ 23.

[30] *Id.* at ¶¶ 26-49; Affidavit in Support of Massachusetts Department of Revenue's Motion for Summary Judgment (the "Affidavit"), Docket No. 12-2 at ¶ 21.

as of February 19, 2013, the amount of the Debtor's outstanding tax liability for the Periods at Issue was $144,544.65.[31] On January 12, 2010, the Debtor received a discharge. An order discharging the Chapter 7 trustee and closing the case entered on January 15, 2010.

On August 8, 2012, the Debtor moved to reopen his case for the purpose of filing an adversary proceeding seeking a determination that the income tax debt for the Periods at Issue was discharged. In the absence of an objection, the motion to reopen was granted on August 21, 2012, and the Debtor filed his complaint on August 23, 2012. On September 18, 2012, the MDOR filed an answer denying the allegations of the Debtor's complaint and asserting counterclaims that the taxes in question are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(1)(B)(i) and/or (C). On October 15, 2012, the Debtor filed an answer denying the allegations of the counterclaims.

The MDOR filed the Motion for Summary Judgment on February 25, 2013. On April 3, 2013, the Debtor filed the Opposition. I heard the Motion for Summary Judgment on April 5, 2013, and, after the conclusion of oral arguments, took the matter under advisement. On April 18, 2013, the MDOR filed a supplemental memorandum in further support of the Motion for Summary Judgment.

## IV. POSITIONS OF THE PARTIES

### A. The MDOR

With respect to the first counterclaim, the MDOR argues that the definition of "return" provided in the "hanging paragraph" of 11 U.S.C. § 523(a) requires that a purported return "satisf[y] the requirements of applicable nonbankruptcy law (including applicable filing

---

[31] Affidavit, Docket No. 12-2 at ¶ 20.

6

requirements)."[32] The MDOR contends that the parenthetical phrase "including applicable filing requirements" includes the requirement that income tax returns be filed timely. Because they were not, the MDOR concludes that the Debtor's late-filed returns do not qualify as "returns" under 11 U.S.C. § 523, and therefore, no returns were filed for the Periods at Issue, rendering the taxes in question are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B)(i). In support of this construction of the statute, the MDOR relies on a plethora of cases that have held a late-filed return can never qualify as a "return" for purposes of 11 U.S.C. § 523(a).[33]

As to the second counterclaim, the MDOR asserts that the undisputed facts of record demonstrate that the Debtor willfully attempted to evade or defeat a tax, rendering the tax nondischargeable under 11 U.S.C. § 523(a)(1)(C). Relying on several circuit level appellate decisions, the MDOR contends that the Debtor's failure to pay the taxes or make any estimated payments coupled with his failure to file returns satisfies the conduct element of this section.[34] With respect to the element of willfulness, the MDOR states that it is undisputed that the Debtor had a duty to file tax returns, knew he had such a duty, but nonetheless voluntarily and intentionally violated that duty based on his deliberate allocation of resources to obligations

---

[32] 11 U.S.C. § 523(a).

[33] *See*, *e.g.*, *McCoy v. Mississippi Tax Comm'n (In re McCoy)*, 666 F.3d 924 (5th Cir. 2012); *Shinn v. Internal Revenue Service (In re Shinn)*, No. 10–8139, 2012 WL 986752 (Bankr. C.D. Ill. Mar. 22, 2012); *Hernandez v. United States of America (In re Hernandez)*, No. 11–5126, 2012 WL 78668 (Bankr. W.D. Tex. Jan. 11, 2012); *Cannon v. United States of America (In re Cannon)*, 451 B.R. 204 (Bankr. N.D. Ga. 2011); *Links v. United States of America (In re Links)*, No. 08–3178, 2009 WL 2966162 (Bankr. N.D. Ohio Aug. 21, 2009); *Creekmore v. Internal Revenue Service (In re Creekmore)*, 401 B.R. 748 (Bankr. N.D. Miss. 2008); s*ee also Wogoman v. Internal Revenue Service (In re Wogoman)*, 475 B.R. 239 (B.A.P. 10th Cir. 2012) (affirming the bankruptcy court's determination that the debtor's tax liability was nondischargeable under any test); *Mallo v. Internal Revenue Service (In re Mallo)*, No. 10-12979, 2013 WL 49774 (Bankr. D. Colo. Jan. 3, 2013) (following *In re Wogoman*). But see *Perkins v. Massachusetts Dep't of Rev. (In re Perkins)*, No. 12-3030, slip op. at 1 (Bankr. D. Mass. Apr. 8, 2013); *Brown v. Massachusetts Department of Revenue (In re Brown)/Gonzalez v. Massachusetts Department of Revenue (In re Gonzalez)*, 489 B.R. 1 (Bankr. D. Mass. 2013); *Martin v. United States of America (In re Martin)*, 482 B.R. 635, 639 (Bankr. D. Colo. 2012).

[34] *See United States v. Fretz (In re Fretz)*, 244 F.3d 1323 (11th Cir. 2001); *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 981 (3d Cir. 1997); *Toti v. United States (In re Toti)*, 24 F.3d 806, 807 (6th Cir. 1994).

other than taxes. Indeed, the MDOR argues that "[t]his Court should find that the Debtor's failure to pay his taxes combined with preferential nonessential spending," such as gambling, "satisfies the 'willfulness' requirement."[35]

### B. The Debtor

First, the Debtor argues that I should adopt Judge Hoffman's reasoning in *In re Brown/Gonzalez* and find that he filed tax returns for the Periods at Issue. Relying on that case, he states that a late filed return still serves as a formal assessment pursuant to Mass. Gen. Laws ch. 62C, § 26(a).[36] The Debtor further asserts that under the MDOR's view, 11 U.S.C. § 523(a)(1)(B)(ii) would only apply to the miniscule instances when the Internal Revenue Service (the "IRS") prepares returns pursuant to 26 U.S.C. § 6020(a), thus rendering the provision meaningless.

Next, with respect to the MDOR's claim that he willfully attempted to avoid or evade taxes, the Debtor argues that it is the MDOR has failed in its burden to demonstrate that the Debtor was aware he had a duty to file an income tax return. He further contends the issue of whether he intentionally violated such a duty is a clearly a factual question that must be resolved at trial.

## V. DISCUSSION

### A. The Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[35] Memorandum of Law in Support of Massachusetts Department of Revenue's Motion for Summary Judgment (the "Memorandum"), Docket No. 12-1 at 9.

[36] *In re Brown/Gonzalez*, 489 B.R. at 6.

8

judgment as a matter of law."[37]  "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."[38]  Material facts are those having the potential to affect the outcome of the suit under the applicable law.[39]  The absence of a material factual dispute is a "condition necessary," but not a "condition sufficient" to summary judgment.[40]

The party seeking summary judgment "always bears the initial responsibility . . . of identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of material fact."[41]  The nonmoving party must then "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'"[42]  A trialworthy issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[43]  The court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[44]

---

[37] Fed. R. Civ. P. 56(a) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[38] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

[39] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[40] *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 764 (1st Cir.1994).

[41] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

[42] *Triangle Trading Co.*, 200 F.3d at 2 (*quoting Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

[43] *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[44] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

B. <u>Nondischargeability of Taxes under Section 523(a)(1)(B)</u>

Section 523(a)(1)(B) of the Bankruptcy Code provides in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
    (1) for a tax or a customs duty—

\* \* \*

    (B) with respect to which a return, or equivalent report or notice, if required—
        (i) was not filed or given; or
        (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition . . .[45]

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005[46] ("BAPCPA") amended 11 U.S.C. § 523(a) by adding an unnumbered "hanging paragraph" that defines the term "return" for purposes of that subsection. It states:

For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (*including applicable filing requirements*). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.[47]

On June 11, 2013, I entered a Memorandum of Decision in *Pendergast v. Massachusetts Dep't of Revenue*, a case which presented an issue identical to the case at bar.[48] I held that a late-

---

[45] 11 U.S.C. § 523(a)(1)(B).

[46] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Title III, § 302, 119 Stat. 23 (2005).

[47] 11 U.S.C. § 523(a)(*) (emphasis added).

[48] *Pendergast v. Massachusetts Dep't of Revenue (In re Pendergast)*, No. 12-1215, slip op. (Bankr. D. Mass. June 11, 2013).

10

filed Massachusetts income tax return fails to satisfy Mass. Gen. Laws ch. 62C, § 6(c),[49] one of the "applicable filing requirements" of the "applicable nonbankruptcy law," and therefore, is not a "return" within the meaning of 11 U.S.C. § 523(a), rendering the tax nondischargeable under 11 U.S.C. § 523(a)(1)(B)(i) because no return was filed.[50] I hereby incorporate the analysis contained therein by reference.

Here, each of the Debtor's Massachusetts income tax returns for the Periods at Issue were filed late. Thus, for purposes of 11 U.S.C. § 523(a)(1)(B)(i), no returns were filed and the tax liabilities due for the Periods at Issue are nondischargeable. Accordingly, the MDOR is entitled to judgment as a matter of law with respect to the first counterclaim.

C. Nondischargeability of Taxes under Section 523(a)(1)(C)

Section 523(a)(1)(C) of the Bankruptcy Code provides in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (1) for a tax or a customs duty—
>
> * * *
>
> > (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax . . . .[51]

Exceptions to discharge must be strictly construed in favor of the debtor.[52] The MDOR bears the burden of proving that the Debtor willfully attempted to avoid his taxes by a preponderance of the evidence.[53]

---

[49] Section 6(c) of Chapter 62C further requires that "returns under this section shall be made on or before the fifteenth day of the fourth month following the close of each taxable year." Mass. Gen. Laws ch. 62C, § 6(c).

[50] *Id.*

[51] 11 U.S.C. § 523(a)(1)(C).

[52] *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

In *Matter of Birkenstock*, the United States Court of Appeals for the Seventh Circuit recognized that:

> The plain language of the second part of § 523(a)(1)(C) comprises both a conduct requirement (that the debtor sought "in any manner to evade or defeat" his tax liability) and a mental state requirement (that the debtor did so "willfully").[54]

The "conduct" requirement is satisfied "where a debtor engages in affirmative acts to avoid payment or collection of taxes."[55] Nonpayment of tax alone is not sufficient to bar discharge of a tax liability, but is relevant evidence under the totality of the circumstances.[56] Indeed, the United States Courts of Appeal for the Third, Sixth, and Eleventh Circuits have all held that nonpayment of a tax coupled with the failure to file returns satisfies the conduct requirement of 11 U.S.C. § 523(a)(1)(C).[57]

To establish the "willful" element of 11 U.S.C. § 523(a)(1)(C), the MDOR must show that the debtor "(1) had a duty to file income tax returns and pay taxes; (2) knew he had such a duty; and (3) voluntarily and intentionally violated that duty."[58] Intent may be proven by

---

[53] *Steinkrauss v. United States (In re Steinkrauss)*, 313 B.R. 87, 91 (Bankr. D. Mass. 2004) (*citing Stamper v. United States (In re Gardner)*, 360 F.3d 551 (6th Cir. 2004)); *see United States v. Beninati*, 438 B.R. 755 (D. Mass. 2010).

[54] *Matter of Birkenstock*, 87 F.3d 947, 951 (7th Cir. 1996) (*quoting* 11 U.S.C. § 523(a)(1)(C)). *See In re Fegeley*, 118 F.3d at 983; *Rossman v. United States (In re Rossman)*, 487 B.R. 18, 35 (Bankr. D. Mass. 2012).

[55] *In re Fretz*, 244 F.3d at 1328–29 (*citing In re Haas*, 48 F.3d 1153 (11th Cir. 1995); *In re Griffith*, 206 F.3d 1389 (11th Cir. 2000)).

[56] *See Matter of Birkenstock*, 87 F.3d at 951; *Dalton v. IRS*, 77 F.3d 1297, 1301 (10th Cir. 1996); *In re Haas*, 48 F.3d at 1158; *In re Steinkrauss*, 313 B.R. at 97.

[57] *See In re Fretz*, 244 F.3d at 1329; *In re Fegeley*, 118 F.3d at 984; *In re Toti*, 24 F.3d at 809; *see also Tudisco v. United States (In re Tudisco)*, 183 F.3d 133, 137 (2d Cir. 1999) (describing failure to pay and file along with false affidavit to employer); *Bruner v. United States (In re Bruner)*, 55 F.3d 195, 200 (5th Cir. 1995) ("A pattern of non-payment such as is present here, particularly when accompanied by a pattern of failure to file returns and coupled with conduct obviously aimed at concealing income and assets, certainly constitutes a willful attempt to evade or defeat taxes for purposes of § 523(a)(1)(C).").

[58] *In re Fretz*, 244 F.3d at 1330; *see Griffith v. United States (In re Griffith)*, 206 F.3d at 1396; *In re Fegeley*, 118 F.3d at 984; *In re Rossman*, 487 B.R. at 36; *In re Steinkrauss*, 313 B.R. at 91.

circumstantial evidence.[59] In *In re Rossman*, Judge Feeney of this district identified several types of conduct that courts look to as circumstantial evidence of the debtor's willful intent, including: (1) "implausible or inconsistent explanations of behavior;" (2) "inadequate financial records;" (3) "transfers of assets that greatly reduce assets subject to IRS execution;" (4) "transfers made in the face of serious financial difficulties;" (5) "significant dealings in cash and maintenance of an extravagant lifestyle;" (6) "the existence of disposable income during the relevant tax years and its depletion without reservation for payment of taxes when due;" and (7) "evidence that the tax payer had the financial resources to pay but simply did not."[60]

From the outset, I note that the issue presented under 11 U.S.C. § 523(a)(1)(C) is whether the Debtor willfully attempted to evade his tax liabilities arising from his 2005 tax return. Based on the facts presented at this stage, the MDOR has not sustained its burden. The Debtor filed his 2005 tax return timely, so the only conduct complained of is the nonpayment of the tax, which is legally insufficient to satisfy the conduct requirement.[61] Moreover, the record is almost entirely devoid of any evidence, direct or circumstantial, that the Debtor "voluntarily and intentionally" failed to pay his taxes. The MDOR only points to his gross income over the years as evidence that he had the resources to pay the taxes when due, but gross income without more does not paint a complete portrait of the Debtor's finances. Notably absent from the record is any information regarding the Debtor's expenses for that same period, making it impossible to

---

[59] *In re Rossman*, 487 B.R. at 37.

[60] *Id.* (quoting *United States v. Beninati*, 438 B.R at 757; *United States v. Spiwak*, 285 B.R. 744, 751 (S.D. Fla. 2002); *Lacheen v. United States (In re Lacheen)*, 365 B.R. 475, 483 (Bankr. E.D. Pa. 2007); *Hamm v. United States*, 356 B.R. 263, 286 (Bankr. S.D. Fla. 2006)) (internal quotation marks omitted).

[61] Admittedly, the Debtor neither paid his taxes nor filed his returns between 1999 and 2004. While this track record might suggest a pattern of tax evasion, the fact that he filed his 2005 tax return timely may be evidence that he turned a new leaf. At the summary judgment stage, I am required to resolve such inferences in favor of the non-moving party.

13

determine whether he actually had the resources to pay the taxes. Admittedly, the Debtor gambled and reported a substantial gambling loss in 2005, and that does not bode well for him. Nevertheless, I reserve judgment for a more developed record.

## VI. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order granting the Motion for Summary Judgment with respect to the first counterclaim for the Periods at Issue and denying summary with respect to the second counterclaim for the year 2005.

                                                                                        _____
                                                                                        William C. Hillman
                                                                                        United States Bankruptcy Judge

Dated: June 11, 2013

Counsel Appearing:

      Celine E. Jackson, Massachusetts Department of Revenue, Boston, MA,
          for the MDOR
      Roger Stanford, Standford & Schall, New Bedford, MA,
          for the Debtors